# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

JANE WILLIAMS OLIVER,                )
    Plaintiff,                      )
                                    )
v.                                   )   **Case No. 1:12cv1032**
                                    )
CHARLEYRENE DANFORTH HINES,          )
et al.,                              )
    Defendants.                     )

MAY – 1 2013

## MEMORANDUM OPINION

At issue in this diversity suit to invalidate an *inter vivos* trust is whether the judicially-created probate exception to federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them"[1] operates to require dismissal of this suit. It does not. By Order dated March 5, 2013, dismissal on this ground was denied, and this memorandum opinion elucidates the reasons for that ruling.

## I.[2]

Plaintiff Jane Williams Oliver, a citizen of New Jersey, is the daughter—and only living child—of Colonel William P. Oliver, Jr., United States Marine Corps (retired), the putative settlor of the William P. Oliver, Jr., Amended Trust (the "Amended Trust"), the *inter vivos* trust at issue here. Defendant Charleyrene Danforth Hines, a citizen of New Mexico, is the trustee and an Amended Trust beneficiary. Defendant Patricia D'Rene Danforth Lethgo, a citizen of New Mexico, is Mrs. Hines' daughter and an Amended Trust beneficiary. Defendants Kate

---

[1] *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992).

[2] The facts recited here are derived from the complaint and notice of removal. A forthcoming findings of fact and conclusions of law will set forth the facts found at trial.

– 1 –

Williams Johnson and G. Frederick Williams are citizens of Florida, Amended Trust beneficiaries, and Col. Oliver's cousins. Defendant Daniel F. Johnson, a citizen of Florida, is Kate Johnson's husband and is also an Amended Trust beneficiary. Although defendants Kate Johnson, Daniel Johnson, and G. Frederick Williams were served with the complaint, they have not noticed an appearance in this matter.[3]

Col. Oliver created the William P. Oliver, Jr., Trust on April 22, 1992. The majority of Col. Oliver's assets were placed in the trust, and the parties agree that the value of the trust exceeds $1 million. At issue here is the putative July 23, 2008 Amendment to the Trust, which named Mrs. Hines as the trustee and primary beneficiary of the Amended Trust, and her daughter, Mrs. Lethgo, as the Amended Trust's primary beneficiary upon Mrs. Hines' death.[4]

Col. Oliver died on January 22, 2012. The Clerk of the Circuit Court of Fairfax County, Virginia admitted the Last Will and Testament of William P. Oliver, Jr. to probate and qualified Mrs. Hines as Executor of Col. Oliver's estate on March 9, 2012. Col. Oliver's daughter, Ms. Oliver, then initiated this lawsuit in the Circuit Court of Fairfax County, Virginia on August 6, 2012, seeking a declaration that the Amended Trust was void. Ms. Oliver alleges that the Amended Trust appears to have been altered by someone other than Col. Oliver and that it does not reflect Col. Oliver's genuine intent. Defendants Hines and Lethgo, with the consent of the remaining defendants, timely removed this suit on September 14, 2012, pursuant to 28 U.S.C. §§ 1441 and 1446.

---

[3] It appears from the record that the Amended Trust has already paid these defendants their benefit.

[4] Neither the original trust nor the Amended Trust was attached to the complaint or the notice of removal. Based on the pleadings, it appears that Ms. Oliver and her now-deceased sister were the original trust's trustees and primary beneficiaries.

## II.

It is well settled that a case may only be removed if the federal courts would have had original jurisdiction over any claim. *See* 28 U.S.C. § 1441. This case was removed from state court on the basis of diversity jurisdiction and proceeded here through discovery up to the time of trial. Yet, notwithstanding the progress of the case here, the statute commands that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). And as the Fourth Circuit has succinctly put it, if "federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). So it is thus necessary and appropriate, *sua sponte*, to consider whether the so-called probate exception operates here to negate subject matter jurisdiction and require a remand.

Although the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," there are two judicially created exceptions to otherwise proper federal jurisdiction: (i) the domestic relations exception and (ii) the probate exception. *See Ankenbrandt*, 504 U.S. 689 (domestic relations exception); *Marshall v. Marshall*, 547 U.S. 293 (2006) (probate exception). The origins of the probate exception are obscure,[5] but the probate exception is believed to originate with the Judiciary Act of 1789, as "the equity jurisdiction conferred by the Judiciary Act of 1789[,] which is that of the English Court of Chancery in 1789, did not extend to probate matters." *Markham v. Allen*, 326 U.S. 490, 494 (1946).[6] Despite the

---

[5] The Seventh Circuit described the probate exception as "one of the most mysterious and esoteric branches of the law of federal jurisdiction." *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982); *see also Marshall*, 547 U.S. at 298 (the probate exception is a "judicially created doctrine[] stemming in large measure from misty understandings of English legal history").

mystery surrounding its origins, the probate exception is now well-established and the Supreme Court in *Marshall* recently reaffirmed the continued vitality and narrowed scope of the exception. There, the plaintiff, in a bankruptcy adversary proceeding, brought a tortious interference claim against her late husband's son for allegedly interfering with her expectancy from an *inter vivos* trust. *Marshall*, 547 U.S. at 301. The plaintiff prevailed on the merits in both the bankruptcy court and the district court, but the Ninth Circuit reversed, holding that the probate exception barred federal jurisdiction because it raised "questions which would ordinarily be decided by a probate court in determining the validity of the decedent's estate planning instrument[.]" *Id.* at 304. The Supreme Court reversed, unpersuaded by the Ninth Circuit's reasoning, explaining that this case "falls far outside the bounds of the probate exception[.]" *Id.* at 308. In so holding, the Supreme Court more narrowly and sharply defined the probate exception as follows:

> The probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 311–12.[7] Put simply, the probate exception bars the exercise of federal jurisdiction in cases that (i) seek to probate or annul a will, or administer a decedent's estate, and (ii) cases that

---

[6] Justice Stevens, in a concurrence, argues that "the most comprehensive article on the subject has persuasively demonstrated that *Markham*'s [explanation of the probate exception] is 'an exercise in mythography.'" *Marshall*, 547 U.S. at 316 (Stevens, J., concurring) (quoting John F. Winkler, *The Probate Jurisdiction of the Federal Courts*, 14 Probate L.J. 77, 126 (1997) (*Markham*'s "suggestion that the High Court of Chancery had lacked jurisdiction to 'administer an estate' was preposterous")).

[7] Prior to *Marshall*, there appears to have been at least three different tests for determining whether a dispute fell within the probate exception. *See* Peter Nicolas, *Fighting the Probate Mafia: A Dissection of the Probate Exception to Federal Court Jurisdiction*, 74 S. Cal. L. Rev.

seek to dispose of property that is in the custody of the state probate courts. Importantly, the Supreme Court criticized the expansion of the exception by some circuit courts "over a range of matters well beyond probate of a will or administration of a decedent's estate[,]" such as breach of duty by an executor, breach of fiduciary duty by a trustee, and tortious interference with a plaintiff's expected inheritance. *Id.* at 311.[8]

At issue here is whether the probate exception, as narrowly defined in *Marshall*, applies to an *inter vivos* trust in the circumstances at bar. Prior to *Marshall*, a long-standing split of authority had developed on this issue; on the one hand, several courts have held that the probate exception does not apply to an *inter vivos* trust.[9] On the other hand, a number of courts have held that an *inter vivos* trust is a will-substitute that is subject to the probate exception.[10] A close

---

1479, 1487–92 (2001) (identifying three tests: (i) nature of the claim test; (ii) route test; and, (iii) practical test).

[8] *See Mangieri v. Mangieri*, 226 F.3d 1, 2–3 (1st Cir. 2000) (extension of probate exception to breach of duty by an executor); *Leopard v. NBD Bank, Div. of Bank One*, 384 F.3d 232, 234–27 (6th Cir. 2004) (extension of probate exception to breach of duty by a trustee); *Reinhardt v. Kelly*, 164 F.3d 1296, 1300–01 (10th Cir. 1999) (extension of probate exception to tortious interference with a plaintiff's expected inheritance).

[9] *See Curtis v. Brunsting*, 704 F.3d 406, 409–10 (5th Cir. 2013); *Sianis v. Jensen*, 294 F.3d 994, 999 (8th Cir. 2002) (citing a law review article for the proposition that "[m]any, if not most, courts have held that the probate exception does not apply to actions involving trusts").

[10] *See Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 849 (6th Cir. 2006) ("Refusing to hear cases regarding will substitutes is consistent with *Markham* because adjudication concerning will substitutes would frequently interfere with probate administration.); *In re Marshall*, 392 F.3d 1118, 1135 (9th Cir. 2004) (noting that plaintiff "cannot avoid the probate exception simply by stating that the trust which she claims was to be created for her benefit was an inter vivos trust"); *Lepard v. NBD Bank*, 384 F.3d 232, 237–38 (6th Cir. 2004) (discussing the probate exception in the context of breach of fiduciary duty claims involving a trust); *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 359 (3d Cir. 2004), *overruled, in part, on other grounds by Marshall*, 547 U.S. at 311) ("causes of action involving trusts are treated under the probate exception in the same way as actions involving wills"); *Storm v. Storm*, 328 F.3d 941, 947 (7th Cir. 2003)

reading of *Marshall* arguably suggests that the Supreme Court has swept aside this split of authority by providing a sharper and clearer definition of the exception and its boundaries.[11] In any event, *Marshall*'s teaching makes clear that the probate exception does not apply, as here, to a suit that seeks to invalidate an *inter vivos* trust.

To begin with, the probate exception, as a judicially created exception, is, as *Marshall* confirms, narrow. And, the thrust of the *Marshall* decision makes clear that the scope of the probate exception is limited to actual probate matters. The Supreme Court rejected the repeated expansion of the exception to matters that were merely ancillary to probate. An *inter vivos* trust is not a will, and although it may, on occasion,[12] serve as the functional equivalent of a will, the application of the probate exception to such trusts would mark an unwarranted expansion of the exception. There are, as the Supreme Court noted, "no 'sound policy considerations' [that] militate in favor of extending the probate exception to cover the case at hand." *Marshall*, 547 U.S. at 312.[13] The same is true here. Moreover, a suit to invalidate an *inter vivos* trust does not

---

(holding that "the exception applies despite this being a dispute over the terms of an *inter vivos* trust rather than a traditional will").

[11] The post-*Marshall* district courts that have followed the split do not adequately address the import of *Marshall*. *See, e.g., Vaughn v. Montague*, No. C11:2046, 2013 WL 593786, at *9–10 (W.D. Wash. Feb. 14, 2013) (holding that probate exception applied to certain claims in an inter vivos trust dispute); *Chabot v. Chabot*, No. 4:11cv217, 2011 WL 5520927, at *3–*6 (D. Ida. Nov. 14, 2011) (holding that probate exception could apply to an inter vivos trust); *see also Marcus v. Quattrocchi*, 715 F.Supp.2d 524, 531 n.4 (S.D.N.Y. 2010) (collecting cases); *Kennedy v. Trustees of Testamentary Trust of Will of Kennedy*, 633 F.Supp.2d 77, 81–82 (S.D.N.Y. June 19, 2009) (discussing application of probate exception to dispute involving testamentary trust).

[12] Some trusts, such as the trust at issue here, supplement, rather than replace, a will. Here, Col. Oliver formed the Amended Trust in addition to, rather than in place of, a will.

[13] Indeed, as Justice Stevens noted in his concurrence in *Marshall*, rather "than preserving whatever vitality that the "exception" has retained as a result of the *Markham* dicta, I would

-6-

require a federal court to assume in rem jurisdiction over property subject to the jurisdiction of a state probate court. As the Fifth Circuit explained in *Curtis*, "because the assets in a living or inter vivos trust are not property of the estate at the time of the decedent's death, having been transferred to the trust years before, the trust is not in the custody of the probate court and as such the probate exception is inapplicable to disputes concerning administration of the trust." 704 F.3d at 410.[14] Accordingly, a federal court may properly exercise jurisdiction over a diversity suit that seeks to invalidate an *inter vivos* trust without running afoul of the probate exception; indeed, to apply the probate exception to such a suit would impermissibly expand the scope of the probate exception.

The courts that have applied the probate exception to *inter vivos* trusts have reasoned that the probate exception applies because the *inter vivos* trust is merely a will-substitute.[15] As one district court recently explained, the application of the probate exception to an *inter vivos* trust "makes sense given that Americans increasingly use trusts to transfer their wealth rather than wills." *Chabot*, 2011 WL 5520927 at *4.[16] Yet, this argument is unpersuasive. Although an

---

provide the creature with a decent burial in a grave adjacent to the resting place of the *Rooker–Feldman* doctrine." *Marshall*, 547 U.S. at 318 (Stevens, J., concurring). Although neither the probate exception nor the *Rooker-Feldman* doctrine warrants burial, neither warrants judicial expansion.

[14] *See also Sianis*, 294 F.3d at 999 (holding that because the "probate court entertained no jurisdiction over [the trust's] res" and because parties could not "have challenged the validity of the Trust in the probate proceeding," the probate exception did not apply to an *inter vivos* trust).

[15] As one law review article puts it, "will substitutes are nothing more than 'nonprobate wills[.]'" John H. Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harv.L.Rev. 1108, 1137 (1984).

[16] *See also Storm*, 328 F.2d at 947 ("Given the growth in recent years of various 'will substitutes,' we are loath to throw open the doors of the federal courts to disputes over

*inter vivos* trust may, on occasion, serve as the functional equivalent of a will,[17] there is no warrant for expanding the probate exception to cover such trusts, given that the Supreme Court specifically cautioned against any judicial expansion of the exception. As Chief Justice Marshall once cautioned, a court "must take jurisdiction if it should . . . [as a court has] no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 6 Wheat 264, 404 (1821).[18]

### III.

These principles applied here point persuasively to the conclusion that the so-called probate exception does not operate here to oust the exercise of federal diversity jurisdiction. This suit seeks to invalidate the Amended Trust, not a will. Moreover, this suit does not seek the administration of an estate or the probate of a will. And importantly, the assets in the Amended Trust are not subject to the jurisdiction of a state probate court. Accordingly, the probate exception does not apply to this dispute, and diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332.[19]

---

testamentary intent simply because a decedent chose to use a will substitute rather than a traditional will to dispose of his or her estate.").

[17] Of course, the argument that a trust is the functional equivalent of a will for jurisdictional purposes loses considerable force where, as here, the decedent had a successfully probated will in addition to an *inter vivos* trust.

[18] *See also Marshall*, 547 U.S. at 299 ("In the years following Marshall's 1821 pronouncement, courts have sometimes lost sight of his admonition and have rendered decisions expansively interpreting the [probate exception].").

[19] Like all diversity cases, although the federal court is competent to hear this case, it does not follow that the federal court is the best forum for such a case. State courts have special expertise and experience in matters such as *inter vivos* trusts, and importantly, in the event that difficult or novel issues are presented, appeals from the state courts are taken to the state appellate system rather than to the federal appellate system. These are sound reasons for a plaintiff to choose a state forum for adjudication of this dispute. But, as long as Congress gives parties the choice of

An Order issued on March 5, 2013 setting forth this ruling.

Alexandria, VA
May 1, 2013



T. S. Ellis, III
United States District Judge

---

a federal forum, that forum has an "unflagging" duty to exercise the jurisdiction Congress has allowed.